Thank you, Your Honor. May it please the court, my name is Jonathan DeBiry. I have the honor of representing Mr. Richard Kipperman, a state court-appointed receiver in this matter. This case involves a number of novel issues, issues that are matters of first impression, both in this circuit and other circuits. The one I would like to start with is the question of how one values a claim and as of what date one values a claim. The reason I'd like to start with that is because... Your visual has blanked out. Could you check that your video is on? Thank you. I was receiving a message that the court had stopped my video, then it came back, and I guess it left again, so I apologize for that. The reason I want to start with that issue is because we get fairly explicit guidance from the statute as to how we are supposed to do that. The statute in question is Section 506 of the Bankruptcy Code. It starts by saying in 506A1 that the claim of a creditor secured by a lien on property is secured to the extent of the creditor's interest in the debtor's interest in the property. In other words, to parse that, the creditor's secured interest is in the debtor's equity of the collateral. Then Section 506... Wait, wait, wait. Where are you getting that concept from? Because the code talks about, first of all, the debtor's interest in the collateral. And the creditor has an interest in the debtor's interest in the collateral. And the debtor's interest in the collateral is basically the debtor's equity. What is the debtor owed after a senior secured creditor is paid? So it's, in many respects, an equity question. Then Section 506A1 tells us that the value is to be determined in light of the purpose of the evaluation and the proposed distribution or use of the collateral, and in conjunction with a hearing on the disposition or use of the property or a plan affecting the creditor's interest. Let me ask you this kind of from my perspective, cutting to the chase. The opposition says that the code requires this to be valid as of the date of the petition. Your position is you've got to see what happens with the collateral. But if we adopted your position, it's fairly indeterminate. It could go on arguably for years, right? Let's say one year, hypothetically, after the filing there was a public offering or there was a settlement that substantially increased or reduced the amount. Could that possibly have been what Congress intended in this situation? Actually, quite a number of cases say that there can be multiple valuations of the collateral depending upon the reason we are doing it. In a Chapter 11, for instance, you might have, are we going to do a cram down? Are we going to do a priming lien? The considerations and the value of the collateral when we're doing a priming lien could be different from how you would value the collateral during cram down. So, yes, the code does envision multiple valuations. Cram downs under 11 are a little different than what we're talking about here, are they not? Well, Your Honor, Section 5 is applicable to Chapter 11s. 1, 3, and 5 are applicable to both 7s, 11s, and 13s. So you think we should analyze this question in the same way we would a valuation after a cram down? I think you should evaluate this question in accordance with Section 506A1, which is, first, ask yourself, why are we doing this valuation? What's the purpose? And that's the first question that 506A1 proposes. Then, once you decide why you are doing the valuation, you say, what use is being made of the property? How is, and this is the Doosnap case, and I'm probably mispronouncing that, Doosnap, is what use is being made of the property? I want to talk to you about the Doosnap case. The opposing counsel suggests that your argument raised on Doosnap's holding that the liens passed through bankruptcy was waived because you didn't raise the argument to the bankruptcy court. Could you address that? Did you waive this argument? Can we consider it now? Yes, we can, for a number of reasons. First, I don't believe it was waived, and I'll discuss that. But also, it's a purely legal issue, and this court certainly has the discretion to consider purely legal issues. On appeal, the trustee has not argued any prejudice as a result of this, so it's squarely before the court. But, in fact, we did argue before the court, and this was a change in position, but the bankruptcy court listened to the argument. Obviously, Judge Albert didn't accept the argument, but he listened to it, allowed us to change our position. The district court addressed the issue, and we said what you look to is what is the value of the claim at the time you're going to use the asset, and that is Doosnap. And we argue, and Doosnap says that, again, you look at what are you going to do with the property? How is the creditor's interest in the property going to be affected? And it is once you have that in mind that you then go to, and we do this in the context, or at least in conjunction with, a hearing on the plan affecting the creditor's interest. Now that- One more question about Doosnap. So Doosnap in the subsequent case called it dealt with real property while this case is dealing with personal property with accounts receivable. So is Doosnap still applicable when there's personal property involved rather than real property? Yes, section 506A1 talks in terms of a claim of a creditor secured by a lien on property. It does not say real property. It does not say personal property. It says property of the estate. 506A2 talks about personal property and is limited to just personal property and would not affect real property. But 506A1 does not have, is not property specific. It applies to both real and personal property. And the 506A1 does not mandate a specific date, but it does say that you have to be doing something to the property that will affect the creditor's interest. The petition date, therefore, is really an improper date to choose, at least as the default, because on the petition date, we don't know why we're valuing the property. We don't know what disposition is going to be made of the property. We're not having a hearing on the disposition or use of the property. It is, as the Laskin case says, which is a Ninth Circuit bat case, until we have some intended use or disposition, it's hypothetical. We don't know why we should value it. Should we do it as a going concern if it's a business? Do we do it for liquidation purposes? We have to know why we are doing it. And we don't know what we are doing on the petition date. And we certainly, in this Chapter 7, did not know what we were doing on the petition date because it took the trustee seven years to bring this motion. And none of that information, and I apologize for getting a dry throat there, none of this information was available on the petition date. So now that we are looking at the proposed, we hope, distribution of the collateral, which is money, we can say, well, let's value it. And fortunately, it's very easy to value money. It's the amount that the trustee has. So we don't need to have an extended hearing. We just have to recognize that the proper valuation date is the date when we're going to put that property to use. In this instance, it's a disposition. And that is what 506A1 says. We look to how we are going to use the property and why we're valuing it. Another error that's been made by many of the courts... You say use. You mean in terms of calculating what each debtor, I'm sorry, creditor is going to get? I suppose what some debtor might get as well? It's use in the sense of a use that is going to affect the creditor's interest. And that would, again, go down to, is this a prime lien? Is it a sale of the property free and clear? To go back to Your Honor's earlier questions, many times a valuation will be determinative and there will only be one. If a property is sold free and clear of all liens, that valuation pretty much sticks with the property, or at least the collateral, the resulting sale proceeds. So we don't necessarily have a series of valuations. But again, we have to be grounded in the statute. Now, many cases, some cases have said, well, we should use the petition date because that's what 502A, or B rather, says we should use to determine the claim. That's a fallacy. 502B says that we determine the claim as of the petition date. But that has nothing to do, ultimately, necessarily, with 506A, which looks to the value of the estate's interest in the collateral. How much a senior creditor is owed on the petition date may be wildly different from how much is the secured creditor owed on the date of valuation. He may have been paid by others. As happened here, he may have compromised the claim, the secured senior lender. He may have sold off a part of the debt. And that raises the question of who should benefit from those changes in the amount of the debt. Does your analysis create a potential problem of having multiple hearings in which the value of the asset would vary, depending on what's happening in the market? So let's say, hypothetically, we had a piece of real property the week before COVID started. All the tenants were paying their rent. And then six months later, half the tenants are not paying the rent. And then after COVID's over, they start paying, well, three-quarters of them pay the rent. How do we handle your concept of the appropriate date for evaluation in that setting? Well, the first question would be, when is this motion being brought, and what is the purpose of the motion? If it's a motion for relief from stay, I would argue you should value the property as of the date of that motion, because we have to look to see if the secured creditor has equity, I'm sorry, whether the debtor has equity, whether the property is necessary to reorganization, and other things of that matter. On the other hand, if we're looking at it post-COVID, then we would use that. I get your point. But what you're proposing is a pretty flexible standard. Maybe that's what the Bankruptcy Code envisions. I'm not positive, but that's what you're recommending, is it not? Well, remember, a creditor can't simply walk into court and say, today I'd like to get a valuation of the property to decide what I want to do. There has to be a purpose for the request. If it's relief from stay, then that's the date. If it's resisting priming liens or a cram down, then that's the appropriate time. It's when is the property being put to use. And until there is an anticipated use of the property, I don't think a creditor has standing to go in and ask for a valuation. Something has to be being done. I now have 2 minutes, 24 seconds. I would like to save some time. Very well. All right, Landau, you have some time, of course. Good morning, Your Honors. Roger Landau on behalf of Howard Grobstein, the Chapter 7 trustee, and if it may please the Court. As we've described, most bankruptcy courts apply the petition date when valuing a secured claim under 506 in a Chapter 7 liquidation. We've provided cases that come from the Middle District of Florida. Judge Steele, the judge in this case, described it. And the reason is very simple. The purpose of a Chapter 7 liquidation is to liquidate. And as a result, under the Bankruptcy Code, the assets are composed of everything that existed as of the petition date. That's Section 541, Property of the Estate. Let me just interrupt you for just one second. So when your opponent talks about Chapter 3, 5, 7, and so on, you're saying that because this is a liquidation, you don't have any of the crammed down Chapter 11 issues that would otherwise be involved? Sure. What Congress did is they gave flexibility to the bankruptcy judge to choose the kind of valuation the bankruptcy judge thought was important and was appropriate. And the point of our papers is that most bankruptcy judges in Chapter 7 liquidations have chosen the petition date. If that's what we are governed by, and we're talking about bankruptcy judges, why isn't Mr. DuBarry's point correct that it depends on the purpose of the motion, and that should be the date of valuation? It's the purpose of the valuation. It's not the purpose of the motion. The purpose of the valuation is to effectuate a liquidation and a prorated distribution as is contemplated under Chapter 7. That was the purpose. And the bankruptcy court has the flexibility. We aren't saying that it doesn't. The bankruptcy court knew it had the flexibility, and the bankruptcy court chose that date because he thought it was the right date. You don't choose a date based upon what's best for a junior secured creditor. You figure out what's best for the case. What do we do about DUSNAP saying that the lien, DUSNAP and Colquitt, I guess, is the subsequent opinion, saying that the lien, once there's an allowed claim, then the lien continues until the end of the day, and the lien can't be voided. How do we deal with that issue? So that's the law. But understand that that has to do with an asset that continues to exist throughout the bankruptcy case. That doesn't have to do with a liquidated piece of property. When you have a liquidated piece of property, you have cash. And when you have cash, you figure out whether the proceeds attach or not. Let me make sure I understand this. Obviously, a real property stays the same throughout the bankruptcy. On the accounts receivable, are you saying that the accounts receivable were disposed of before the end of the case? Right. So the money we're talking about is the right to a payment in which there were management fees that were collected by the trustee, and it turned into cash. For example, according to Mr. Kipperman's, there's $88 million of litigation claims in the schedules. Now, we don't think they exist, but that's the argument that they made. Those litigation claims, if they have a lien on them, and I'm not sure they do, the liens on commercial torts, and I think it might be a commercial tort, but I don't know what the collateral is, actually, because it wasn't described ever. But whatever asset that is, that lien passes through the bankruptcy case. A 3012 valuation does not strip a lien. And so there's no liens being stripped. All that's happening is that there's liquidating a right to payment, and that right to payment is being valued in order to effectuate a liquidation, the way almost every bankruptcy court values things based upon in a Chapter 7 liquidation. Okay, let's take that as a given, but based on your opponent's comment, he says that the statute actually doesn't really delineate whether it's real or personal property. And since you acknowledge that the bankruptcy judge needs flexibility, why doesn't his proposed approach work just fine, where you basically allow the bankruptcy judge to determine based upon the interests of the estate what the appropriate valuation date is and not just tie it to the petition date? Oh, I don't think it has to be the petition date, and I don't think the judge thought it had to be the petition date. I believe that it's flexible, and the court and the judge has discretion to decide. But if you're asking me whether it makes sense to choose a different date, you have to have a reason. What your opponent is saying, it depends on the purpose of the motion. Right, so the purpose of the motion is to liquidate and to effectuate a prorated distribution. And by the way, you also have to come to the conclusion that the judge's decision, the trial court judge's decision, that he has discretion to choose a date, that somehow that date that everybody else chooses, and let's put it in context, Mr. Kipperman argued in favor of the petition date for the date for all three papers he filed. For three months he argued for it. The only time he didn't argue for it was at the hearing. To now say that at the hearing I've changed my mind, and now a year and a half later say that for the first time that the court abused its discretion by choosing the petition date that Mr. Kipperman promoted for three months, and which every other court that we can see from a Chapter 7 liquidation does. I mean, sure, there are unusual circumstances that might choose a different time, and the bankruptcy court has that discretion. And especially it'd be true if there were, certainly 506 is applied for, I don't know, valuing claims for voting purposes under a Chapter 11 plan. Let me ask you about the reclassification. So your client moved to reclassify Brewer's claims, secured to unsecured, is that right? And the bankruptcy court agreed. Why isn't that voiding the lien effectively? Once the so-called reclassification basically said your lien no longer exists, it's now an unsecured claim. So I think that that, I don't mean to parse words, but it's valuing the claim, not voiding the lien. So the reason that there's a difference is that $88 million of liens, no matter how you value the claim, that lien continues. That's why Do SNP is really inapplicable in this situation. So you aren't stripping a lien, but if you've got an asset with multiple creditors, senior to junior, you have to figure out who gets paid and who doesn't and how much they get paid. And especially when you're dealing with collateral pools in which there are competing, there could be multiple creditors who don't have the same collateral. You have to figure out what people have. If I understand your argument, you're saying that in this particular case, these particular facts, what the bankruptcy judge did was okay, but it doesn't have to be a firm rule. It can change based on the facts of a different case, depending on the nature of the collateral and the purpose for filing the petition to value. Is that correct? Yes, yes. The judge has the... And in fact, in the bankruptcy judge's decision, the bankruptcy judge cited a case called Marsh in which the parenthetical says, you know, it usually fixes the petition date, but you can do others. And the district court judge, who wrote an excellent opinion, Judge Fisher. Judge Fisher wrote and said... She actually said they didn't make an argument of abuse of discretion. What the argument was from Mr. Kipperman in the district court was that it was a matter of law. You should choose a different date, even though they had argued for this date for three months. So, you know, to say that the judge made a mistake by agreeing with Mr. Kipperman until the hearing and that even though he has discretion and even though everybody else does it, that somehow this case is particularly unique. And by the way, understand that when you're talking about the disposition, these are rights to payment. There might be 20 different disposition dates. I don't know what the payment date's going to be. I don't know how... I mean, we filed the motion. You could do a motion date. But the goal of the bankruptcy case is not to maximize the claims of junior unsecured creditors, and they were unsecured under the bankruptcy code pursuant to the applicable law, which, by the way, just I want to make sure... You know, you only look at the debtor's assets. Mr. Harkey, who was the principal, that collateral doesn't count. It's not part of the property. The fact that there's an alter ego claim has nothing to do with whether it's property of the estate. There hasn't been a... Can you explain why the petitioner has a lien and is unsecured at the same time? Oh, sure. He's wholly undersecured. He has a lien, and the lien is on property that has no value. At least have no value to him. And value comes in. I mean, his argument is that value then comes back into the estate based on deals made by the trustee, and then his lien has value. So that's another way to do the argument. Yeah, so Dusnip talks about what happens if the collateral increases in value. That's what Dusnip was about. And so if you're wholly undersecured, and the collateral increases in value, then you could spring up. You could have a spring in value. And so is there a collateral increase in value in this case? There is no evidence that the collateral increased in value. And if it did, because we provided evidence that said that it was no more than $8 million, and we liquidated and we gave notice of how much we obtained from the collateral, that's the best we can do. And understand, I want to make sure that you understand, Mr. Kipperman has the duty to prove his claim. That's what the Ninth Circuit in their other point center case determined that Brewer himself, Brewer itself, must prove their claim. They have the duty. They didn't prove how much the collateral was worth. They cited schedules which the bankruptcy judge properly thought were not reliable, and he said so. They didn't describe what collateral they have, and they continue, including in the reply brief, saying that the trustee didn't value the collateral. It's not the trustee's job to prove a claim. The fact that their proof of claim does not describe what collateral they have meant that we went out and tried to find it. And after we found it and we liquidated it, that's what we have. And in the event that that $88 million litigation claim becomes of value, if that lien, and they have a lien on it, they get it, assuming that they have a lien, which is also subject to an appeal because the district court denied that as well. Understand, I just want to make sure that there was a comment about how we waited six years. First off, there's no bar date. 3012 doesn't have a bar date. 70485 of the bankruptcy code says that the trustee can file proofs of objections to claims at any time. And understand that what really happens here is that the Brewer Group jumped up when attorneys were being paid and said, oh, no, we have a lien. We looked at their proof of claim. They don't really say what they have a lien in. We tried to figure it out. There was an order. It said that they don't have a lien in the rights to payment. We weren't worried about the litigation claims. That may or may not be worth $88 million. We don't think so. And then what happened is that in 2019, the Ninth Circuit vacated the order of the bankruptcy court having to do with the lien, which resulted in getting mandamus back to the bankruptcy court. And then within months, we filed this motion. So the idea that there's been six years... And by the way, we've been litigating with these people for five or six years. The idea that we somehow sprung it on them, it's just not true. And, of course, that is the first argument in the reply brief for some reason. It has no validity. There's no bar date. We didn't trick anyone. Anyway, I'm sorry. All right. Any other questions for Mr. Landau by members of the panel? Thank you very much. I hope I wasn't screaming at the computer. Oh, no. So, Mr. Dabiri, let me ask you this. It sounds to me like you and Mr. Landau, in terms of the law, generally don't seem to be at odds all that much except that you believe that in this case, the judge picked the wrong date for evaluation. He had flexibility, but he picked the wrong date. In this case, he used petition date. Why was what he did an abuse of discretion? Several reasons. First of all, Your Honor, if you read the judge's opinion, which is in the Record of Appeal on page 19, we don't believe that the judge felt he was exercising discretion. In fact, if you read the pleadings that led up to that,  the argument was that the law makes the default and perhaps mandates the use of the petition date. And if you read the ruling, the court quoted the Soroka case and said, consistent with the majority view the court finds in a Chapter 7, the petition date is the appropriate one for valuation. The court then quoted the Whaley case that also says the petition date is. So the judge did not exercise discretion in choosing this date. He felt that the law. He didn't exercise discretion. But get back to my question, though. You and your opposing counsel both agree this is a flexible date, not tied to the petition date. So why should we find that you are correct here and not Judge Fisher and the bankruptcy judge? Because what was the purpose of the valuation? And when was the property to be put to use? Mr. Landau seems to have conceded that a lien in property continues and that, in fact, we remain secured creditors. I am, frankly, somewhat confused by his argument because he says we have a lien, but then says somehow he can avoid it. And this is basically. He says that your collateral didn't increase in value. Do you have a lien on collateral worth nothing? Do you agree with that? I do not for several reasons. The lien was in the accounts receivables of the debtor. Those were converted to cash, and our lien went to the cash. So that cash has value. During the course of the bankruptcy, the claim of the secured creditor who was senior to us was diminished twice, once by a settlement, and the trustee could have taken an assignment of that reduction and failed to do so and is asking this court to save him from not taking that assignment of the reduction, which would have solved his problem on that end, and he simply didn't do it. And then there was a sale of a portion of the debt, which reduced it by some $4.8 million. Either of those events would have put us in the money. Once either of those events occurred, there was value to our lien, and that is why you look to when is the property actually going to be put to use, in this case distribution of creditors. And it's easy to value money. It's the value of money. We also point out, and I'll deal with this very briefly, the court did not value everything. The trustee put on no evidence of value of what all the assets of the estate were on the petition date, if they were arguing the petition date. Instead, Mr. Landau would stand up and say, well, Your Honor, we don't think it was worth anything. And the court accepted those representations. That's not evidence. We put on the schedules. Maybe you can discount them some, but as of today... I'm sure you're over your time. Thank you, Your Honor. Let me ask my colleague whether either has any additional questions for either of these gentlemen. We thank both counsel. You're obviously very learned, experienced counsel in this very complex bankruptcy. Generally, it's a complex area of law, unless you happen to practice it. But we thank you both. It's very helpful. The matter of Kipperman v. Gropstein is submitted.
judges: M. Smith, Ikuta, Steele